IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 22-cv-01116-RM

M.M.H.,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

    Defendant.

___

**ORDER**
___

Plaintiff seeks judicial review of Defendant's denial of her application for supplemental security income.  *See* 42 U.S.C. § 405(g).  The Court has reviewed the pleadings, case file, and applicable law and now affirms Defendant's decision for the reasons below.

**I.  BACKGROUND**

Plaintiff filed her application on April 6, 2011, alleging disability beginning on June 14, 2009.  Her application was denied.  After a hearing at which Plaintiff testified and was represented by counsel, the administrative law judge ("ALJ") determined she was not disabled and issued an unfavorable decision on October 15, 2012.  After the Appeals Council denied Plaintiff's request for review, she appealed to this Court.  Before the Court reached a decision, Defendant requested a remand, which the Court granted.

On remand, a second ALJ held a hearing, at which Plaintiff testified and was represented by counsel.  The ALJ issued another unfavorable decision on April 8, 2016.  After the Appeals

Council denied Plaintiff's request for review, she again appealed to this Court. The Court once again remanded the matter, and the Appeals Council directed the ALJ to reconsider the opinion evidence and correct any legal standards involved in reaching a decision in the case.

A new hearing before the ALJ was conducted by telephone on August 20, 2020. Once again Plaintiff testified and was represented by counsel. The ALJ issued the most recent unfavorable decision on September 3, 2020. After the Appeals Council denied Plaintiff's request for review, she appealed again to this Court.

In reaching the unfavorable decision underlying this case, the ALJ applied the five-step process for evaluating disability claims. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the application date. (ECF No. 8-14 at 14.)

At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, obesity, borderline intellectual functioning, and depressive disorder with avoidant personality traits. (*Id.*)

At step three, the ALJ determined Plaintiff's impairments, considered independently and in combination, did not meet or medically equal the severity of a listed impairment. (*Id.*)

Before reaching step four, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 416.967(b).  The ALJ further limited Plaintiff's RFC as follows:

> [S]he can occasionally lift and or carry about twenty pounds.  She is able to occasionally lift and or carry about ten pounds.  She can stand and/or walk about four hours out of an eight-hour workday.  She can sit for about six hours out of an eight-hour workday.  She must be allowed to alternate positions for a few minutes every hour[] but would not be required to leave the workstation and would not be off task for the position changes.  She should never be required to climb tall ladders, ropes, or scaffolds.  She can occasionally climb stairs and ramps.  She can frequently balance.  She can occasionally stoop, kneel, crouch and crawl.  She must avoid more than occasional work with vibrating tools.  She must avoid more than occasional exposure to an environment with concentrated exposure to pulmonary irritants, such as fumes, odors, dusts, and gasses.  She should not work at unprotected heights[] or around large, dangerous, moving machinery.  She can understand and remember simple routine tasks that can be learned by demonstration on the job in about a thirty-day period of time.  This person can sustain[] concentration, persistence, and pace for these tasks over a typical workday and workweek in a low stress environment.  Low stress is defined as, this person can tolerate occasional interactions with coworkers and the public, but is able to tolerate supervision, she can make simple work decisions, can tolerate routine type task changes.  She is able to recognize and avoid work hazards.

(*Id.* at 17.)

At step four, the ALJ determined Plaintiff could not perform her past relevant work as a dietary aide as the job is actually or generally performed.  (*Id.* at 29.)

At step five, the ALJ determined Plaintiff could perform the requirements of jobs such as assembler of small products, scale attendant, and facility rental clerk, noting a ten percent erosion in the number of facility rental clerk positions to account for storage facilities that have more than occasional public contact.  (*Id.* at 30.)

The Appeals Council denied Plaintiff's request for review on January 9, 2017, making the ALJ's decision final.  *See* 20 C.F.R. § 404.981.  Plaintiff then brought this case.

## II. LEGAL STANDARD

The Court reviews the ALJ's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052 (quotation omitted). To determine whether the substantiality test has been met, the Court meticulously examines the record as a whole, including anything that may undercut or detract from the ALJ's findings, but the Court does not reweigh the evidence or retry the case. *Id.* "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

## III. DISCUSSION

### A. Dr. Benson's Opinion

Plaintiff first contends the ALJ erred by failing to adopt *all* the mental limitations assessed by Dr. Benson, a psychologist, despite giving great weight to his opinion. After a consultative evaluation, Dr. Benson assessed Plaintiff with mild impairment in her ability to understand, remember, and carry out simple instructions and moderate limitations in her ability to so with complex instructions. He also assessed moderation limitations in her ability to make judgments on complex work-related decisions; interact appropriately with the public, supervisors, and coworkers; and respond appropriately to usual work situations and changes in a

4

routine work setting.  But the Court is not persuaded that Dr. Benson's opinion required the ALJ to limit further Plaintiff's RFC.

First, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).  Finding an opinion deserves great weight does not mean that it must be incorporated into the RFC wholesale. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.").  Plaintiff presents no authority to the contrary.  Thus, even though the ALJ gave great weight to Dr. Benson's findings and opinions, that does not mean the ALJ did not still have a duty to independently determine Plaintiff's RFC.

Second, the Court sees no inherent inconsistency between the moderate limitations Dr. Benson assessed—as to Plaintiff's ability to carry out complex instructions, interact appropriately with others, and respond appropriately to work situations—and the ability to meet the requirements of the jobs identified by the vocational expert.  The ALJ expressly concluded that the moderate limitations in some of the areas assessed by Dr. Benson suggested *no greater* limitations in those areas.  (*See* ECF No. 8-14 at 27.)  And the ALJ appears to have had these limitations in mind when she limited Plaintiff's RFC to working in a low stress environment—defined as being able to make simple work decisions and to tolerate supervision, routine type task changes, and occasional interactions with coworkers and the public.  (*See id.* at 17.) Plaintiff has not shown or explained how her limitations preclude her from performing any of the jobs above.

Third, even if different conclusions could be drawn from the evidence, the Court's role is to review merely the sufficiency of the evidence, not its weight. *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007). As discussed below, Plaintiff's description of her daily activities, inter alia, suggests she was not as limited as she claims, further supporting to the ALJ's determinations that she can make simple decisions and tolerate supervision, occasional interactions with the public, and routine changes. An RFC determination reflects the maximum degree to which a claimant retains the capacity for sustained performance of the physical and mental requirements of various jobs. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). Plaintiff has not shown the evidence in the record is insufficient to support the ALJ's determination that she could perform light work with the additional limitations imposed.

### B.     Drs. Danylchuk's and Watson's Opinions

Plaintiff next contends the ALJ should have given more weight to the opinions of two treating physicians, Drs. Danylchuk and Watson, though she concedes they are not entitled to controlling weight. (ECF No. 10 at 22.) The most important factors the ALJ considers when evaluating the persuasiveness of a medical opinion are supportability and consistency. *See* 20 C.F.R. § 416.920c(a). The supportability inquiry focuses on the relevance of the objective medical evidence and supporting explanations presented by the medical source. 20 C.F.R. § 416.920c(c)(1). The possibility of drawing different conclusions from the evidence does not mean an ALJ's findings are not supported by substantial evidence. *See Lax*, 489 F.3d at 1084. The consistency inquiry focuses on the extent to which the medical opinion is consistent with the evidence from other medical and nonmedical sources in the claim. 20 C.F.R. § 416.920c(c)(2).

The ALJ found Dr. Danylchuk's December 2015 opinion was entitled to limited weight because it was not consistent with the treatment records and clinical findings. Despite Plaintiff's allegations of continuing back pain, the ALJ found that "the imaging studies showed only mild to moderate findings longitudinally and have been stable in recent years." (ECF No. 8-14 at 24.) The ALJ also found that Plaintiff "has repeatedly had intact motor function, neurological function, coordination and gait." (*Id.* at 19.) And the ALJ found that Plaintiff's description of her daily activities—which included driving, cooking, cleaning, doing laundry, grocery shopping, taking care of her children, and personal grooming—was not entirely consistent with the degree of pain and limitation she alleged at the hearing. It is well established that "disability requires more than mere inability to work without pain," *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir. 1986), and the ALJ was not bound to accept Plaintiff's subjective allegations of pain in the absence of objective medical evidence supporting them, *see Angel v. Barnhart*, 329 F.3d 1208, 1213 (10th Cir. 2003). In addition, the ALJ noted that Plaintiff was no longer taking pain medication, had declined surgery for her back, and had a relatively conservative treatment history. (ECF No. 8-14 at 18, 21.)

Based on these findings, the ALJ concluded that the limitations assessed by Dr. Danylchuk were not supported by the record. Dr. Danylchuk opined that Plaintiff was limited to lifting and carrying ten pounds occasionally, sitting for thirty minutes at a time for six hours out of an eight-hour workday, standing and walking for 15 minutes at a time for three hours, and seldom stooping, squatting, crawling, or kneeling. (*Id.* at 24.) But the ALJ found that even Dr. Danylchuk's own records did not support his estimation of Plaintiff's abilities and noted that three consultative examiners had opined that Plaintiff was not so limited. (*Id.* at 25.)

Thus, the ALJ identified deficiencies in Dr. Danylchuk's opinion in terms of both supportability and consistency.  Further, because the ALJ made clear the reasons for giving limited weight to Dr. Danylchuk's opinion, the Court can meaningfully review the decision even though the ALJ did not explicitly discuss the factors outlined in 20 C.F.R. § 416.927(c).  *See Oldham*, 509 F.3d at 1258 (concluding ALJ is not required to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion); *see also Branum v. Barnhart*, 385 F.3d 1268, 1275-76 (affirming weight given to osteopath's opinion although ALJ did not expressly consider all six factors).  Accordingly, the Court discerns no error in the ALJ's decision to give it only limited weight.

The ALJ also gave limited weight to Dr. Watson's February 2019 and July 2020 opinions, which are nearly identical to Dr. Danylchuk's.  These opinions suffer from the same deficiencies identified above, and the Court discerns no error with respect to the ALJ's determination that they were entitled to only limited weight.

### C.   Jobs Identified by Vocational Expert

Finally, Plaintiff also contends the two of the jobs the vocational expert said she could perform—scale attendant and facility rental clerk—require level-three reasoning, and therefore they are inconsistent with the ALJ's determination that she is limited to performing simple routine tasks.  However, the ALJ found that Plaintiff "can understand and remember simple routine tasks that can be learned by demonstration on the job in about a thirty-day period of time."  (ECF No. 8-14 at 17.)  According to the Dictionary of Occupational Titles ("DOT"), both jobs have a specific vocational preparation level of two, defined to include "[a]nything beyond short demonstration up to and including 1 month."  1991 WL 672108; 1991 WL 672594.  And

the DOT defines level-three reasoning as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* The Court discerns no inherent inconsistency between these prerequisites and Plaintiff's RFC as assessed by the ALJ. Plaintiff's reliance on *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), is misplaced here because the ALJ described the type of simple routine tasks Plaintiff could perform and the jobs identified by the vocational expert fit within that description.

Further, Plaintiff concedes she could work as an assembler of small products, and the vocational expert testified that such jobs exist in significant numbers, with approximately 25,000 jobs in Colorado. (ECF No. 8-14 at 58.) Thus, even if the ALJ should not have concluded these are jobs Plaintiff can perform, the error would be harmless. *See Mays*, 739 F.3d at 579.

**IV. CONCLUSION**

Therefore, the Court AFFIRMS the Commissioner's decision.

DATED this 7th day of February, 2023.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge